No. 24-12300

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

CITADEL SECURITIES LLC,

*Petitioner*,

v.

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

Petition for Review of an Order of
the Securities and Exchange Commission
Release No. 34-100181

## UNOPPOSED MOTION TO HOLD PETITION IN ABEYANCE

Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

*Counsel for Petitioner*

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1 through 26.1-3, Petitioner Citadel Securities LLC provides the following certificate of interested persons:

The undersigned counsel of record certifies that the following listed persons and entities as described in 11th Circuit Rule 26.1-2 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Barbero, Megan**, counsel for Respondent United States Securities and Exchange Commission.

2. **Citadel Securities GP LLC**, parent company of Petitioner Citadel Securities LLC.

3. **Citadel Securities LLC**, Petitioner.

4. **Conley, Michael A.**, counsel for Respondent United States Securities and Exchange Commission.

5. **Francisco, Noel J.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

6. **Hardin, Tracey A.**, counsel for Respondent United States Securities and Exchange Commission.

7. **Hoyt, Joshua T.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

8. **Jones Day**, counsel for Petitioner Citadel Securities LLC.

9. **Lucas, Brinton**, Jones Day, counsel for Petitioner Citadel Securities LLC.

10. **Matro, Daniel E.**, counsel for Respondent United States Securities and Exchange Commission.

11. **Rabbitt, Brian C.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

12. **Roth, Yaakov M.**, Jones Day, counsel for Petitioner Citadel Securities LLC.

13. **United States Securities and Exchange Commission**, Respondent.

No publicly traded company or corporation has an interest in the outcome of the case. Petitioner will file an amended certificate of interested persons should it become aware of a change in interests that would affect the disclosures as required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-4.

Dated: July 19, 2024                                      Respectfully submitted,

*/s/ Noel J. Francisco*
Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

*Counsel for Petitioner*

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-2, the undersigned counsel hereby certifies that Petitioner Citadel Securities LLC is a wholly owned, indirect subsidiary of Citadel Securities GP LLC. Counsel further certifies that no publicly held corporation has a 10% or greater ownership interest in Citadel Securities GP LLC.

Dated: July 19, 2024

Respectfully submitted,

*/s/ Noel J. Francisco*
Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

*Counsel for Petitioner*

## TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS ....................................................... C-1
CORPORATE DISCLOSURE STATEMENT ......................................................... C-3
INTRODUCTION .................................................................................................. 1
BACKGROUND ................................................................................................... 2
ARGUMENT ........................................................................................................ 6
CONCLUSION .................................................................................................... 9
CERTIFICATE OF COMPLIANCE ............................................................ Certificate 1
CERTIFICATE OF ELECTRONIC SUBMISSION ................................. Certificate 2
CERTIFICATE OF SERVICE ..................................................................... Certificate 3

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arango v. Wainwright*,
　716 F.2d 1353 (11th Cir. 1983) .................................................................. 7

*Basardh v. Gates*,
　545 F.3d 1068 (D.C. Cir. 2008) ............................................................. 6, 7

*Ctr. for Biological Diversity v. EPA*,
　56 F.4th 55 (D.C. Cir. 2022) ...................................................................... 7

*In re Lee County v. Kimberly Regenesis, LLC*,
　No. 21-14434 (11th Cir. 2021) .................................................................. 6

*In re Miller*,
　618 F. App'x 654 (11th Cir. 2015) ............................................................ 6

*Jones v. Ga. State Bd. of Pardons & Paroles*,
　59 F.3d 1145 (11th Cir. 1995) ................................................................... 6

*Landis v. N. Am. Co.*,
　299 U.S. 248 (1936) ................................................................................... 6

*United States v. Republic of Honduras*,
　75 F.4th 1288 (11th Cir. 2023) .................................................................. 6

*Wheaton Coll. v. Sebelius*,
　703 F.3d 551 (D.C. Cir. 2012) ................................................................... 7

**STATUTES**

15 U.S.C. § 78y ................................................................................................ 5, 7

**OTHER AUTHORITIES**

75 Fed. Reg. 32556 (2010) ................................................................................. 2

77 Fed. Reg. 45722 (2012) ............................................................................................ 2

81 Fed. Reg. 30614 (2016) ....................................................................................... 3, 5

81 Fed. Reg. 84696 (2016) ............................................................................................ 3

85 Fed. Reg. 31322 (2020) ....................................................................................... 4, 5

88 Fed. Reg. 62628 (2023) ............................................................................................ 3

89 Fed. Reg. 45715 (2024) ............................................................................................ 5

Letter from B. Becker to V. Countryman (May 23, 2023) ................................................. 5

Letter from B. Becker to V. Countryman (Feb. 13, 2024) ................................................. 5

Letter from Citadel Securities to V. Countryman (Mar. 4, 2024) ..................................... 5

## INTRODUCTION

Last year, Citadel Securities LLC and the American Securities Association (ASA) sought this Court's review of an order (the Funding Order) of the U.S. Securities and Exchange Commission (Commission or SEC) that would implement and fund an unprecedented government surveillance system known as the Consolidated Audit Trail (CAT). *ASA v. SEC*, No. 23-13396 (11th Cir.). In that matter, the challengers contend that the CAT itself—and hence the order providing for its funding—exceeds the SEC's statutory authority. That case is fully briefed and will soon be scheduled for argument.

While that litigation was ongoing, however, the SEC adopted the order here (the Exemptive Order), which relates to a different aspect of the CAT's complex funding regime. To spur the self-regulatory organizations (SROs) tasked with building the CAT to accomplish this feat in a timely manner, the SEC in 2020 set a series of accountability milestones that barred the SROs from passing on certain CAT costs to their broker-dealer members unless the SROs met a set of implementation goals on a specific timeline. Years later, well after missing several of those deadlines, the SROs asked the Commission to retroactively give them more time. In May 2024, the SEC obliged, entering the Exemptive Order, which purports to allow the SROs to pass hundreds of millions of dollars in CAT costs on to broker-dealers such as Citadel Securities. Faced with this revived contingent liability while their separate challenge to the Funding Order (and the CAT as a whole) was still pending, Citadel Securities had no choice but to file this protective petition seeking review of the Exemptive Order as well.

1

This Court, however, need not and should not address the validity of the Exemptive Order at this time. Instead, it should place this petition into abeyance pending the disposition of the fully briefed challenge to the Funding Order, which may entirely moot this case. If the challenge to the Funding Order results in a precedent establishing that the CAT itself exceeds the Commission's authority, this Court will have no need to grapple with whether the Exemptive Order challenged here is independently flawed. An abeyance order would therefore conserve the resources of both the Court and the parties. And it would do so without imposing any prejudice to the SEC, whose financial responsibility for the implementation and operation of the CAT—zero dollars—will remain the same no matter when this petition is resolved.

## BACKGROUND

**1.** In 2010, the SEC dramatically repurposed a vague, 35-year-old statute to propose the creation of the CAT, a massive surveillance tool intended to "aid the Commission" in its own enforcement activities. 75 Fed. Reg. 32556, 32564 (2010). Two years later, the SEC finalized a rule that directed the SROs to develop this unprecedented surveillance system to provide the Commission with data on all orders across all U.S. securities markets—with the SROs left to figure out how to build, fund, and run it. 77 Fed. Reg. 45722 (2012).

In 2015, the SROs (24 exchanges plus the Financial Industry Regulatory Authority (FINRA)) submitted a plan that proposed a mechanism to gather, consolidate, and transmit trading information to the SEC for surveillance and

2

enforcement purposes. 81 Fed. Reg. 30614, 30614-16 (2016). The following year, the Commission approved the plan (CAT NMS Plan) without settling who would pay for its new tool. 81 Fed. Reg. 84696 (2016). Instead, the SEC and the SROs left the precise "allocation" of costs between the "Participants" (the SROs) and the "Industry Members" (broker-dealers) to be worked out "at a later date." *Id.* at 84793, 84795.

    **2.** In 2023, the SEC finally resolved that question by adopting the Funding Order. 88 Fed. Reg. 62628 (2023). Under the Funding Order, fees will be imposed to reimburse the SROs for the nearly $1 billion spent to build the CAT and to pay for the CAT's operations in perpetuity. *Id.* at 62629-30. In theory, the Funding Order provides that costs will be split into thirds, with two-thirds borne by broker-dealers (one-third by the buyer and one-third by the seller), while the remaining third is payable by the SRO on which a trade is executed (*i.e.*, the exchange, or FINRA for off-exchange transactions). *Id.* The Funding Order concedes, however, that because it lets the SROs pass "their CAT fees onto their members in full," in the form of their own fees, broker-dealers and their investor customers could ultimately "bear 100% of the CAT allocation." *Id.* at 62684 n.1135.

    ASA and Citadel Securities timely filed a petition for review challenging the Funding Order as unlawful for several reasons. *See ASA v. SEC*, No. 23-13396 (11th Cir. Oct. 17, 2023), Dkt. No. 1. One of their principal arguments is that the CAT itself—and thus the order funding it—exceeds the Commission's statutory authority and is therefore unlawful. That petition is fully briefed and will soon be set for argument.

3

3.    After briefing on the Funding Order had concluded, the SEC adopted the order at issue in this petition—a separate exemptive order relating to the allocation of CAT costs among the SROs and broker-dealers. Frustrated with the lack of progress in the SROs' implementation of the CAT, the Commission in 2020 imposed a "financial accountability milestone" (FAM) system through an amendment to the CAT NMS Plan. 85 Fed. Reg. 31322 (2020). Under this system, the SROs had to meet certain implementation deadlines at the risk of financial sanction. Specifically, if the SROs "miss[ed] the target deadline[s]," the amount of certain CAT costs they would be "entitled to recover" from their broker-dealer members would "immediately be reduced by 25 percent." *Id.* at 31329. That amount would then be "further reduced by 25 percent for every" 60 or 90 days by which the SROs "miss the target deadline." *Id.* The SEC explained that these sanctions would both increase the likelihood that "the CAT would be implemented more expeditiously and efficiently" and give broker-dealers like Citadel Securities "more certainty," thereby "reducing possible associated and unnecessary implementation and maintenance costs." *Id.* (footnote omitted).

The FAM system imposed a four-phase implementation program with deadlines of July 31, 2020, December 31, 2020, December 31, 2021, and December 30, 2022. *Id.* at 31329 & nn.78-81, 31348-49. According to the Commission, the SROs were required to report, among other things, data regarding responses to electronic requests for quotes (RFQs) that are not immediately actionable by as early as the first deadline—July 31, 2020. *See id.*; 81 Fed. Reg. at 30855.

4

The SROs failed to report the RFQ data by that date. Instead, nearly three years after the initial July 31, 2020 deadline, the SROs asked the Commission in May 2023 to give them until July 31, 2024 to complete the steps necessary to report the data. Letter from B. Becker to V. Countryman (May 23, 2023), https://tinyurl.com/3htt6j4m. After the SEC failed to respond, the SROs filed a materially identical request in February 2024, this time seeking an extension until July 31, 2026. Letter from B. Becker to V. Countryman (Feb. 13, 2024), https://tinyurl.com/58nr3wzn.

On May 20, 2024, the Commission granted the SROs' second request, exempting them from this RFQ-reporting requirement until July 31, 2026—six years after the data was originally due. 89 Fed. Reg. 45715, 45717 (2024). The upshot of this Exemptive Order, according to the SEC, is that the SROs are now free to pass through hundreds of millions of dollars in CAT costs to broker-dealers despite missing the initial deadline and waiting nearly three years after allowing that deadline to lapse to even ask for an exemption. And unsurprisingly, the SROs are currently seeking to pass on those costs to their broker-dealer members. *See* Letter from Citadel Securities to V. Countryman 1 n.1, 4-5 (Mar. 4, 2024), https://tinyurl.com/av6a8bbd (collecting SRO filings seeking to pass through these costs).

Citadel Securities had 60 days to seek review of the Exemptive Order. *See* 15 U.S.C. § 78y(a)(1). Accordingly, on July 17, 2024, Citadel Securities filed a timely petition for review challenging the SEC's Exemptive Order. No briefing schedule or other case-opening steps have been taken by the Court on this petition.

5

## ARGUMENT

This Court should place this petition for review into abeyance pending the disposition of the separate challenge to the SEC's Funding Order, which will soon be set for oral argument before this Court. *See ASA v. SEC*, No. 23-13396 (11th Cir.). Decision in that case may substantially affect, if not entirely moot, this petition.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In exercising that power, courts, including this Court, "[o]ften" hold cases in abeyance "in light of other pending proceedings that may affect the outcome of the case." *Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008) (holding petition for review in abeyance pending resolution of related district-court case); *see, e.g., In re Lee County v. Kimberly Regenesis, LLC*, No. 21-14434 (11th Cir. 2021), Dkt. 11 (holding mandamus petition in abeyance pending resolution of merits issue in related parallel case); *United States v. Republic of Honduras*, 75 F.4th 1288, 1289 (11th Cir. 2023) (noting that this Court held case in abeyance pending Supreme Court decision); *In re Miller*, 618 F. App'x 654, 654 (11th Cir. 2015) (same); *Jones v. Ga. State Bd. of Pardons & Paroles*, 59 F.3d 1145, 1148 (11th Cir. 1995) (same, but pending a decision by this Court sitting en banc).

That practice makes sense. When a related but separate proceeding "could potentially moot" a case before this Court, "judicial economy" counsels in favor of holding the latter in abeyance. *Arango v. Wainwright*, 716 F.2d 1353, 1355 (11th Cir.

6

1983). That approach avoids both "'duplicative litigative activity'" and the needless adjudication of disputes that may become "entirely, or partially, moot." *Basardh*, 545 F.3d at 1069. Indeed, given that "[i]t is a cardinal virtue of Article III courts to avoid unnecessary decisions" wherever possible, they "regularly" hold "cases in abeyance" whenever doing so may "obviate the need to decide." *Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022) (holding "pending petitions for review" in abeyance).

This Court should follow that well-worn path here, as the challenge to the Funding Order may eliminate any need to adjudicate this case. Notably, if that challenge results in a holding that the CAT itself is unlawful, as petitioners there have argued, this Court will never have to resolve whether the Exemptive Order governing deadlines for development of that *ultra vires* regime must be vacated for other reasons. Thus, if this Court does "not decide the merits" of this case "now," it "may never need to." *Wheaton Coll. v. Sebelius*, 703 F.3d 551, 552 (D.C. Cir. 2012) (cleaned up).

Holding this petition in abeyance will also cause no prejudice to the parties. Citadel Securities has sought this Court's review of the Exemptive Order now only as a protective matter in light of the statutory 60-day deadline for filing a challenge. *See* 15 U.S.C. § 78y(a)(1). It is therefore content for this Court to resolve the Funding Order challenge first, which may moot the need for the Court to consider this petition at all. Sequencing the litigation in this manner will also cause no conceivable prejudice to the SEC, which does not oppose this abeyance motion. Deferring resolution of whether *the SROs* can pass through specific CAT costs to *broker-dealers* notwithstanding their failure

7

to comply with regulatory deadlines will have no impact on *the SEC's* bottom line, as the agency does not fund and has not funded the CAT. Nor will this orderly resolution of these separate challenges impede the Commission's regulatory objectives, as the CAT will continue operating just as it had before the SEC reversed course on the consequences for missing its deadlines. Instead, granting abeyance here would save both the Commission and Citadel Securities from the burden of having to litigate a challenge that may never need to be resolved while simultaneously litigating the separate challenge to the Funding Order.

## CONCLUSION

The Court should hold this petition for review in abeyance pending the final disposition of *American Securities Association v. SEC*, No. 23-13396 (11th Cir.).

Dated: July 19, 2024                    Respectfully submitted,

*/s/ Noel J. Francisco*
Noel J. Francisco
Yaakov M. Roth
Brian C. Rabbitt
Brinton Lucas
Joshua T. Hoyt
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com

*Counsel for Petitioner*

8

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with (1) the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,045 words, excluding any parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type-style requirements of Rule 27(d)(1)(E) because it has been prepared in 14-point Garamond (a proportionally spaced typeface) using Microsoft Word.

Dated: July 19, 2024                                Respectfully submitted,

                                                              */s/ Noel J. Francisco*

                                                             *Counsel of Record for Petitioner*

## CERTIFICATE OF ELECTRONIC SUBMISSION

I certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: July 19, 2024.                     Respectfully submitted,

*/s/ Noel J. Francisco*

*Counsel of Record for Petitioner*

## CERTIFICATE OF SERVICE

    I certify that on July 19, 2024, the foregoing Motion was electronically filed with the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: July 19, 2024            Respectfully submitted,

                                          */s/ Noel J. Francisco*

                                          *Counsel of Record for Petitioner*